**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-60232
(Summary Calendar)
_____


HILLARY C. PERDUE,

Petitioner,

versus


FEDERAL AVIATION
ADMINISTRATION,

Respondent.


_____

On Petition For Review of An Order
of the Federal Aviation Administration
Northern District of Texas
(GFT-SW-98-HR-02)
_____

February 3, 1999

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Hillary C. Perdue ("Perdue") petitions this court for review

of a decision of an appeal panel of the Federal Aviation

Administration ("FAA") to demote Perdue by two grades because of

Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

his ongoing refusal to pay the balance due on his government-issued credit card after being reimbursed by the FAA. Perdue argues that the appeal panel's decision to demote him was not supported by substantial record evidence; that the FAA improperly retaliated against him for filing a grievance; and that the FAA's decisions to suspend him twice, remove him, and ultimately demote him violate the Double Jeopardy Clause of the Fifth Amendment. For the following reasons, we conclude that Perdue's claims are without merit.

I.

Perdue was employed by the FAA for fifteen years and for the time relevant to this dispute was an Aviation Drug Abatement Program Specialist. Because Perdue incurred traveling expenses while on government business, he was issued a United States Government American Express ("AMEX") Card. Perdue agreed to pay all charges promptly upon receipt of his monthly AMEX bill, for which he would be reimbursed by the government.

Perdue argues that since December 1995, he had an ongoing dispute with AMEX concerning alleged unauthorized charges totaling $2,293.50. Perdue admits that even though AMEX credited his account in the amount of the disputed charges after canceling the card, he withheld all payment to AMEX as a means of protesting AMEX's handling of his dispute. Despite Perdue's agreement to promptly pay AMEX for government travel expenses, Perdue refused to pay an outstanding balance of $3,218.66, which represented only

2

charges incurred during official government travel and for which he had been fully reimbursed by the FAA.

In early 1997, in connection with an FAA inquiry to determine whether Perdue and several other FAA employees were using government property for personal purposes, the FAA confiscated Perdue's computer hard drive. In response to this action, on February 28, 1997, Perdue filed a grievance with Diane J. Wood, acting manager of the FAA's Drug Abatement Division, complaining of the "Gestapo-like tactics" of the FAA agents.

On March 14, 1997, the FAA informed Perdue of a proposed five-day suspension because of his refusal to pay the AMEX credit card debt after he had been reimbursed by the government. Perdue responded that he would not satisfy the debt "until such time as [he] deem[ed] appropriate." On April 10, 1997, the FAA advised Perdue that he was being suspended for five days for refusal to pay his credit card debt. Perdue did not respond nor did he pay the amount owed. On May 30, 1997, the FAA notified Perdue that he had until June 9, 1997 to furnish documentation of a payment plan to eliminate this debt. When Perdue failed to respond, on June 11, 1997, an employee of the FAA Compliance and Enforcement Branch called Perdue to determine whether he intended to respond to the May 30, 1997 memorandum, and Perdue told her that he would take care of the matter when he felt "it [was] right."

On July 3, 1997, the FAA notified Perdue of a second proposed ten-day suspension for failure to satisfy this indebtedness.

Perdue responded, "I will resolve this issue with American Express when I am ready. All your bully-boy, reprisal, and attempted intimidation tactics will not cause my [sic] to expedite paying American Express." On July 28, 1997, the FAA advised Perdue that he was being suspended for ten days for failing to pay his debt, and that "failure to promptly liquidate this indebtedness may result in an additional disciplinary measure." Perdue did not respond to this notice. On September 11, 1997, the FAA notified Perdue of his proposed removal from his position for failure to pay his AMEX account. Perdue responded by letter on September 25, 1997 stating that he had paid the AMEX debt, and that he was sorry for the "embarrassment that [he] had caused the Federal Service," that he had "allowed [his] pride to overrule [his] good judgment" and that he had "no one to blame but [himself]." On October 23, 1997, the FAA notified Perdue that he was removed from his position.

On October 30, 1997, Perdue timely filed a written request for relief under the FAA Personnel Management System's "Guaranteed Fair Treatment" Appeals Procedure. In accordance with the appeals procedure, the FAA impaneled a tripartite appeal panel. After a hearing at which evidence was presented and closing arguments were made, a majority of the panel concluded that because Perdue had paid the AMEX debt before the decision to remove him was made, there was an insufficient basis for a removal action. The panel also decided that although removal was "too severe," "some significant level of discipline for [Perdue's] behavior [was]

4

appropriate." The panel found that Perdue was a long-term federal employee with an unblemished record, except for his failure to pay the AMEX debt, and that this was an isolated transaction, albeit in "extremely poor judgment." Therefore, the panel mitigated the FAA's decision to remove Perdue by reinstating him two grades below his previous position and denying him back pay. Perdue seeks review in this court of the FAA's decision pursuant to 49 U.S.C. § 46110(a).

## II.

The appeal panel's findings of fact, "if supported by substantial evidence, are conclusive." 49 U.S.C. § 46110(c); *see King v. NTSB,* 766 F.2d 200, 203 (5th Cir. 1985). Under the substantial evidence test, this court must determine whether "'the agency . . . could fairly and reasonably find the facts as it did.'" *Chritton v. NTSB,* 888 F.2d 854, 856 (D.C. Cir. 1989) (citation omitted). "'As an appellate court reviewing an administrative order, it is not [this Court's] function to reevaluate the weight of the evidence or to reexamine credibility choices made by the finder of fact.'" *King,* 766 F.2d at 203. In reviewing nonfactual matters, this court should follow the standards of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706. *See Public Citizen, Inc. v. FAA,* 988 F.2d 186, 196 (D.C. Cir. 1993). Under APA's the scope of review standard, "the reviewing court shall decide all relevant questions of law, interpret

5

constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. This court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## III.

Under the FAA's Personnel Management System procedures for handling disciplinary and removal actions, "[t]he panel . . . shall have the authority to mitigate the penalty on cases involving conduct." In determining the severity of the discipline pursuant to these procedures, the panel must consider, *inter alia,* "the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently committed. . . ." In this case, there was record evidence showing that for more than eighteen months after receiving reimbursement from the government, Perdue repeatedly refused to pay a debt that he was obligated to pay. Perdue, who was responsible for enforcing FAA regulations, knew that removal was the penalty for a third offense of "failure to pay Government contractor-issued credit card after receiving reimbursement," yet despite two suspensions, he deliberately withheld payment in violation of FAA policy. Moreover, Perdue gained financially by accepting $3,218.66 in

6

reimbursement from the government, but not paying this amount owed to AMEX. We conclude that there is substantial record evidence to support the panel's conclusion that "some significant level of discipline for [Perdue's] behavior is appropriate," and to support its decision to demote Perdue by two grades and deny him back pay.

Addressing Perdue's second claim, we find that Perdue has presented no evidence supporting his allegation that the FAA's decision to issue him a notice of proposed suspension on March 14, 1997 was in retaliation for his having filed a grievance on February 28, 1997.

Finally, the FAA's decisions to suspend Perdue twice, remove him and ultimately demote him do not violate the Double Jeopardy Clause of the Fifth Amendment. It is well established that the Double Jeopardy Clause protects only against the imposition of multiple *criminal* punishments for the same offense. *Hudson v. United States,* 118 S. Ct. 488, 493 (1997) (citing *Breed v. Jones,* 421 U.S. 519, 528 (1975); *Helvering v. Mitchell,* 303 U.S. 391, 399 (1938)).

For these reasons, we find no abuse of discretion in the FAA appeal panel's decision to demote Perdue two grades and deny him back pay for failing to pay government-issued credit card expenses after receiving reimbursement. The February 25, 1998 Opinion and Award of the Arbitrators is AFFIRMED.

7